IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MGE UPS SYSTEMS, INC., | § | |
| | § | |
| Plaintiff | § | |
| vs. | § | CIVIL ACTION NO. 4:04-CV-445-Y |
| | § | |
| FAKOURI ELECTRICAL | § | |
| ENGINEERING, INC., ET AL. | § | |
| | § | |
| Defendants | § | |

## **ORDER DENYING MOTIONS TO STRIKE**

Pending before the Court are three motions to strike filed by the parties: (1) defendants Fakouri Electrical Engineering, Inc., Michael I. Khalil, and Eldrick Lee Lofton's[1] motion to strike plaintiff MGE UPS Systems, Inc.'s expert testimony [doc. # 251], filed May 9, 2005; (2) MGE's objections to and motion to strike the Fakouri defendants' summary-judgment evidence and evidence filed in support of its motion to strike [doc. # 285], filed May 31, 2005; and (3) the Fakouri defendants' motion to strike MGE's summary-judgment evidence [doc. # 326], filed June 29, 2005. After consideration, the Court DENIES the motions.

This is a complicated case involving computer systems and one company's fight to control the method by which its computer systems are serviced. Much of the complication arises from the voluminous and repetitive filings by attorneys on both sides. Counsel in this case are extremely able and experienced, and the Court appreciates the zealousness with which they argue their clients' respective positions. However, they should also consider the dulling effect a blunderbuss approach to litigation can have on any court. These three motions alone raise over 100 evidentiary objections to approximately 28 exhibits and declarations filed by the parties. Such litigation tactics merely

---

[1]These three defendants will collectively be referred to as "the Fakouri defendants."

serve to contribute to the backlog in the federal courts and do little to advance the merits of either side's case. The Court is not suggesting that meritorious arguments should be ignored, but counsel should be mindful of their strongest arguments and should narrowly tailor them to produce their best chance of success.

The evidentiary rulings contained in this order are made with recognition of the fact that this case is at the summary-judgment stage and that these issues relate only to admissibility and not weight. Any admissibility ruling at this point, while probably predictive, does not bind the Court to the same admissibility ruling at an eventual trial. Often, a decision on admissibility can only be made in the context of the trial on the merits.

I. THE FAKOURI DEFENDANTS' MOTION TO STRIKE EXPERT TESTIMONY

The Fakouri defendants move to strike the testimony of MGE's experts, Professor Willis Marti and Dr. Udo Pooch, and to disregard their opinions in deciding the parties' pending motions for summary judgment. They further request that Marti and Pooch not be allowed to testify at trial.[2]

Generally, expert testimony is admissible when it is reliable and when it will assist the trier of fact. *See* FED. R. EVID. 702. This court has substantial latitude to determine whether specific expert testimony is reliable and may consider some or all of the *Daubert* factors[3] when evaluating

---

[2]The Fakouri defendants raise an indistinct *Daubert* argument and do not request a hearing. However, a hearing would not be necessary. The parties have provided exhaustive evidence regarding Marti's and Pooch's methodologies and qualifications. This court has sufficient information to decide reliability without a hearing. *See, e.g., Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 249 (6th Cir.), *cert. denied*, 534 U.S. 822 (2001).

[3]These illustrative factors include whether the methodology used can be and has been tested, whether the methodology has been subjected to peer review, whether there is a known potential rate of error, whether there are standards controlling the technique used, whether a known technique is generally accepted in the relevant scientific or technical community. *Daubert v. Merrell Dow Pharmaceuticals,*

reliability. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149-50 (1999). In other words, this Court performs a screening function to ensure that the expert's testimony is the product of reliable principles and methods. *See id.* at 152; *see also* FED. R. EVID. 702(2).

### A. RELIABILITY OF MARTI'S EXPERT OPINION – METHODOLOGY

The Fakouri defendants first argue that Marti's opinions and conclusions about the use of six impounded laptop computers are not reliable because he used improper forensic methodology in his inspections of the computer evidence, which contaminated and destroyed the evidence. Marti was hired by MGE to assess whether the defendants infringed any of MGE's copyrights or misappropriated trade secrets. (2 MGE Consol. App. at 464.) On June 23, 2004; June 28-29, 2004; August 10, 2004; September 2, 2004; September 4, 2004; January 26-28, 2005; February 17, 2005; and February 22-23, 2005; Marti examined six laptop computers that are at the heart of the parties' dispute. (MGE Supp. App. at 1341.) He concluded that the Fakouri defendants' competing computer program, the FEE Tool, contained material copyrighted by MGE and that the six computers contained material copyrighted by MGE. (MGE Supp. App. at 1339.) The Fakouri defendants' expert, John Wiechman, stated that Marti: (1) used a methodology that deleted 71 files on the computers; (2) used a methodology that contaminated and altered the date and time stamps on 8,803 files on the computers; (3) did not use sanitized floppy disks to boot the computers or to copy data from the computers; (4) performed multiple forced shutdowns on the computers that may have created a number of cross-linked files found on the computers; (5) used improper ghosting procedures to image the computers' hard drives and only obtained part of the data on the computers; and (6) used computers without wiped hard drives during the ghosting procedure. (5 Fakouri Defs.

---

*Inc.,* 509 U.S. 579, 592-95 (1993).

App. at 1678.)

Marti is an associate director for networking at Texas A&M University. He is a West Point graduate and earned a master's degree in computer engineering[4] from Stanford University. His expertise is computer systems, networks, and system performance. He has testified as a computer forensics expert in two cases. He disputes Wiechman's conclusions regarding his methodology. Specifically, he asserts that there is no single computer forensic standard and that his conclusions were based on generally accepted methodology and on the relevant computer information that was not deleted, contaminated, altered, or destroyed. (MGE Supp. App. at 1338-53.) He clearly and completely explains how he examined the computers and how he reached his conclusions. It appears that the Fakouri defendants' argument is, at its core, an argument that Marti's conclusion is unreliable because it contradicts Wiechman's conclusion, which is an insufficient basis for excluding expert-opinion testimony. *See Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 588-89 (7th Cir. 2000). The Fakouri defendants' arguments go merely to the weight to be given to Marti's conclusions and not to their bare admissibility. Although there is some evidence that some files were deleted or altered, it does not appear to affect the ultimate conclusion sufficiently to label his opinions unreliable. Based on Marti's qualifications and his explanations of his methodology, the Court is satisfied that his opinions are sufficiently reliable and that he applied the principles and methods reliably. *See Kumho Tire*, 526 U.S. at 147-48; *Daubert*, 509 U.S. at 589, 593. Of course, this conclusion does not mean that Marti's conclusions are correct. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000). The ultimate determination of the reliability of Marti's opinions is left to the fact-finder. *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1188 (2d Cir. 1992).

---

[4]This degree included a combination of computer-science and electrical-engineering courses.  (MGE Supp. App. at 1351.)

4

B. RELIABILITY OF MARTI'S AND POOCH'S EXPERT OPINIONS – QUALIFICATIONS

The Fakouri defendants next assert that Marti's and Pooch's opinions are unreliable and should be excluded because they are not qualified as electrical engineers and, thus, cannot give opinions regarding the electrical-engineering issues central to this case. Marti and Pooch both state that Fakouri could not have developed its FEE Tool without misappropriating MGE's copyrighted programs.

In support, the Fakouri defendants point to evidence showing that they developed the FEE Tool through use of electrical-engineering principles as applied to MGE-type systems, MGE information that MGE made publically available, and trial and error. They insist that because development of the FEE Tool relied on electrical-engineering principles, any expert testifying as to its development must, necessarily, be expert in electrical engineering. They further argue that Marti's and Pooch's lack of experience with MGE-type computer systems and circuitry disqualify them as testifying experts. The Fakouri defendants concede that Marti and Pooch would be considered experts in computer science; however, they believe that their testimony about development of the FEE Tool and MGE-type systems would be, at best, tangentially associated with their discipline.

A witness may qualify as an expert based on his knowledge, skill, training, experience, or education in the field in question. *See* FED. R. EVID. 104(a), 702. Whether a particular person has sufficient expertise to testify as an expert depends on the facts of the particular case, the questions propounded to the witness, and the witness's specific qualifications. *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999). An expert is qualified if his qualifications provide a foundation to answer a specific question. *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997).

Marti's qualifications are listed above. Pooch is a computer-science professor at Texas A&M University. He obtained a doctorate from Notre Dame in high-energy theoretical physics. He is a registered professional engineer in Texas. He has authored or co-authored 18 books regarding networks, simulation, mini-computers, designing with microcomputers, top-down modular programming, micro-programming, languages, and software engineering. He has researched extensively in operating systems, fault-tolerant environments, reliability, integrated systems, graphics, software systems, development and simulation, computer networks, distributed systems, and real-time systems. He has been a testifying expert in over 60 court cases involving intellectual property, trade secrets, systems developments (e.g., hardware, software, networks, databases), enterprise resource planning, legacy systems, and performance. (MGE Supp. App. at 1356-57.)

The parties hotly contest a core issue in this case: how the FEE Tool was developed. In what appears to be a tactical move, the Fakouri defendants attempt, in their argument against Marti and Pooch, to have the Court recognize acceptance of their version of the FEE Tool's development (it was developed through electrical-engineering principles) as the sole or at least primary qualification for testifying about the FEE Tool itself. Indeed, Pooch states that engineering expertise is not necessary in order to testify how a piece of computer software was designed. Once again, this seems to be a battle of the experts, creating a fact issue but not rendering an opinion inadmissible. Likewise, the Fakouri defendants' argument that Marti's and Pooch's opinions are inadmissible because they lack experience with MGE-type systems is not well founded. The origin of Fakouri's source code, the FEE Tool, can reasonably be determined by relying on Marti's and Pooch's expertise in computer science. Attempting to parse these computer issues and the experts allowed to discuss them into very narrow specialities would misapply the policies inculcated in Rule 702 and

6

*Daubert*.

## II. MGE'S MOTION TO STRIKE EXPERT TESTIMONY AND SUMMARY-JUDGMENT EVIDENCE

MGE argues that 17 of the Fakouri defendants' exhibits in support of their amended motion for partial summary judgment—mainly, declarations—should be stricken. In sum, MGE's arguments tend to focus on the fact that the exhibits do not conform to the requirements of Rule 56(e). *See* FED. R. CIV. P. 56(e). Because MGE's complaints are numerous, the Court will not restate each one in the discussion below. The arguments are sufficiently laid out in the parties' pleadings. To repeat each challenged statement and the arguments for and against exclusion would be needlessly repetitive.

### A. DECLARATION OF PHIL MCANDREW

Phil McAndrew is the executive vice president of operations at Fakouri. MGE argues that because McAndrew is an interested witness, his declaration is bad summary-judgment evidence because much of his testimony does not relate to specific facts, is controverted, and is challenged. Further, MGE asserts that his declaration is "rife with speculation, legal conclusions, and hearsay." (MGE Mot. to Strike at 2.) McAndrew's declaration consists of 40 paragraphs, and MGE attacks approximately 20 of those paragraphs and many attached exhibits on myriad grounds.

The Court, after reviewing the declaration and the objections, concludes that McAndrew has demonstrated more than enough personal knowledge to make the challenged statements more than mere speculation, conjecture, or conclusory. *See* FED. R. EVID. 602. Further, MGE's hearsay objections are without merit. As clearly stated by the Fakouri defendants in their response to MGE's motion, the challenged statements and exhibits are either not hearsay or constitute a recognized

7

exception to the hearsay rule. *See, e.g., id.* 801(d), 803(3), 803(6).

### B. DECLARATION OF ELDRICK LEE LOFTON

Lofton is a field service engineer with Fakouri who was previously employed by MGE. Lofton stated (1) that he learned from MGE employees that MGE sold its software to some of its customers, (2) how he learned that other companies were using MGE's software, and (3) that co-defendant Khalil told him Khalil had an MGE computer in his car during a service call as Fakouri employees. These statements are not hearsay because (1) it is a statement by a party opponent, (2) it establishes his personal knowledge, and (3) it is not offered to prove the truth of the matter asserted. *See id.* 801(d)(2), 602, 801(c). Lofton's statements regarding his opinion why MGE lost business qualifies as a lay opinion. *See id.* 701. The entirety of Lofton's declaration establishes the requisite personal knowledge. *See id.* 602.

### C. DECLARATION OF WILLIAM RUSTRUM

William Rustrum is an expert hired by the Fakouri defendants to provide his opinion regarding the use of MGE's software in servicing MGE's equipment. MGE argues that Rustrum gave no opinion in his declaration regarding the use of MGE software in servicing MGE's equipment, but focused on the development of the FEE Tool by Fakouri. Thus, MGE urges that the Fakouri defendants should be precluded from offering Rustrum's testimony on a subject that was not properly designated. *See* FED. R. CIV. P. 26(a)(2)(B), 37(c)(1). The Fakouri defendants argue that Rustrum's opinions about the FEE Tool are only made in conjunction with his opinion regarding MGE's software. Rustrum's opinions regarding the creation of the FEE Tool go beyond how MGE software is used in servicing MGE-manufactured equipment. Further, although the Fakouri defendants state that this testimony was offered in rebuttal to Marti's statements, rebuttal disclosures

may not be used to circumvent the discovery rules and supply a large amount of expert information. *See Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir. 1996).

However, the issue is whether the failure of the Fakouri defendants to properly designate the subject matter of Rustrum's testimony is harmful to MGE. *See* FED. R. CIV. P. 37(c)(1); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 564-65 (5th Cir. 2004). There was no undue surprise to MGE based on Rustrum's declaration regarding the development of the FEE Tool. McAndrew stated a similar conclusion in his declaration. Further, both declarations were disclosed to MGE well before the close of discovery. Thus, the failure is harmless, and an exclusion sanction would not be appropriate.[5] Further, the three exhibits attached to Rustrum's declaration are not hearsay because they are statements by a party opponent. *See* FED. R. EVID. 801(d)(2). They are also properly authenticated. *See id.* 901.

### D. DECLARATION OF CHESTER SALACINSKI

Chester Salacinski is a former employee of MCI, a company MGE and Fakouri did business with, who states that MGE misled MCI when MGE told Salacinski that MCI could perform routine preventative maintenance itself on MGE equipment. A review of Salacinski's entire declaration reveals that the challenged statements are either properly based on Salacinski's personal knowledge or are opinions by a lay witness rationally based on Salacinski's perceptions. *See id.* 602, 701.

### E. DECLARATION OF PETER DRUMM

Peter Drumm is the general manager of JT Packard and Associates, Inc., which is a company that provides service to MGE equipment. He stated that MGE began ensuring that only MGE could service its equipment. His challenged statements regarding the "phase-in of padlock software" and

---

[5] Indeed, MGE does not argue in its reply that it was harmed by the Fakouri defendants' failure.

9

MGE's forcing MGE equipment owners to use MGE for service are supported opinions by a lay witness. *See id.* 701. The statements and exhibit challenged as hearsay are statements by a party opponent and are, thus, not hearsay. *See id.* 801(d)(2). The statements are further supported by Drumm's personal knowledge of MGE's practice in the industry.

### F.  SUMMARY OF SPRINT'S PAYMENTS TO MGE

The Fakouri defendants submitted copies of MGE's bills to Sprint and also included a summary page that totaled the payments made by Sprint. MGE does not dispute that it produced these bills during discovery; thus, its argument that the exhibit is not properly authenticated is meritless. Further, the summary page is admissible. *See id.* 1006.

### G.  DECLARATION OF SCOTT SORGENFREI

Scott Sorgenfrei is also an employee of JT Packard. He stated that MGE's software is readily available in the open market and "regularly provided such information without concern for confidentiality." MGE asserts that this statement is inadmissible because it is speculative and unsupported. The entirety of Sorgenfrei's declaration shows that his statements regarding MGE's practices in the industry are based on his personal knowledge. *See id.* 602.

### H.  DECLARATIONS OF LLOYD SISEMORE

Lloyd Sisemore was employed by Sprint and worked with Fakouri after it began servicing Sprint's MGE equipment. He stated in his first declaration that Fakouri bought the equipment from MGE, which contained the disputed software, before selling it to Sprint. MGE objects that Sisemore is part of the "alleged conspiracy" and is, therefore, an interested witness. The court finds that Sisemore's declarations are based on his personal knowledge and are proper summary-judgment evidence. *See Grogan v. Sav. of Am., Inc.*, 118 F. Supp. 2d 741, 749 (S.D. Tex. 1999). Further,

under MGE's definition of an interested witness, anyone who could testify as to MGE's alleged lax business practices regarding its software would be part of the conspiracy. The statements MGE challenges as inadmissible for lack of a proper foundation are clearly either based on Sisemore's personal knowledge or are opinions by a lay witness. *See* FED. R. EVID. 602, 701. Likewise, MGE's hearsay arguments are without merit.

MGE argues that Sisemore's second declaration contradicts his first declaration, rendering the declarations improper summary-judgment evidence. MGE fails to specifically point out the contradictions, and this Court is not willing to search for them. Additionally, MGE's hearsay and lack-of-proper-foundation objections to Sisemore's second declaration are without merit in light of the entirety of the declaration.

### I.  EXHIBITS W, X, Z, CC, LL, NN, AND WW

MGE argues that these exhibits should be stricken because they were not authenticated by a person through whom the document would be introduced at trial and do not prove that the document is a true copy of the original. MGE does not dispute in its reply that it produced Exhibits W, X, CC, and LL to the Fakouri defendants during discovery. Thus, these exhibits do not need to be otherwise authenticated. Exhibit Z is a summary, which condenses voluminous information into a chart format. MGE previously stipulated to the admissibility of Exhibit WW. Exhibit NN is a series of complaint reports sent to MGE. MGE redacted the names of the customers from the reports. Although the Fakouri defendants argue that they are admissible under the residual-hearsay exception, these redacted reports were produced by MGE during discovery and, as such, are self-authenticating.

### J.  DECLARATION OF MICHAEL I. KHALIL

MGE argues that Khalil's status as an interested witness renders his declaration inadmissible. There is no legal precedent for excluding per se the testimony of an interested witness. MGE's hearsay objections are without merit because the challenged statements are either not offered to prove the truth of the matter asserted or because the statements are admissions by MGE. *See* FED. R. EVID. 801(c), (d)(2). Further, the entirety of Khalil's declaration shows that his statements are based sufficiently on his personal knowledge. Finally, Exhibit OO-2, which is attached to Khalil's declaration, is sufficiently identified and authenticated in the declaration.

## III. THE FAKOURI DEFENDANTS' MOTION TO STRIKE SUMMARY-JUDGMENT EVIDENCE

The Fakouri defendants object to portions of MGE's evidence submitted in support of its motion for partial summary judgment.

### A. MGE FIELD-SERVICE REPORTS

The Fakouri defendants argue that MGE's field-service reports are inadmissible hearsay and cumulative of other evidence. As pointed out by MGE in its response, the reports are not offered for the truth of the contents of the reports but are rather offered to show MGE's preexisting relationship with Sprint; thus, they are not hearsay. *See* FED. R. EVID. 801(c). Further, although the field-service reports appear to be cumulative of other evidence, it is not so egregious so as to render the reports inadmissible.

### B. DECLARATION OF CECIL MIXON

Cecil Mixon is a private investigator hired by MGE to determine if the Fakouri defendants were illegally using MGE's software to service MGE equipment. In the declaration, Mixon states that an employee of Power Protection Services, which is a subcontractor of defendant DC Group,

told him that the MGE equipment was "working and ready for use" after he manually serviced it. (2 MGE Consol. App. at 453.)  MGE objects that this is inadmissible hearsay.  MGE states that this evidence is offered to prove that the PPS employee was able to attempt to manually service the MGE equipment without using MGE software.  That may be.  But it is not offered to prove that the MGE equipment was working and ready for use, which was the matter asserted.  Thus, it is not hearsay. *See id.*

### C.  DECLARATIONS OF MARK SCHIDLER AND DAVID SIGLER

Mark Schidler and David Sigler are MGE employees who testified in their declarations regarding the operation and expiration dates of the dongles used with MGE software.  The Fakouri defendants first object because MGE did not identify during discovery that Schidler and Sigler were persons with knowledge of relevant facts.  *See* FED. R. CIV. P. 26(a)(1)(A).  However, during the July 2004 and February 2005 depositions of Rod Saunders, who is MGE's corporate representative, both Schidler and Sigler were identified and discussed.  (MGE App. Supporting Resp. at 15-16, 18-23.)  The Fakouri defendants fail to show how they were harmed by the MGE's alleged failure to disclose.  *See id.* 37(c)(1).  Further, Schidler's and Sigler's declarations were offered in rebuttal to arguments asserted by the Fakouri defendants in their motion for summary judgment.

The Fakouri defendants' hearsay and best-evidence objections to Schidler's declaration are meritless for the reasons stated in MGE's response.  The objection to the letter attached to Schidler's declaration is also overruled because it is merely illustrative of the type of document Schidler uses to collect dongles at the end of a licensing agreement and helps to put his statements in context.

### D.  DECLARATIONS OF ROD SAUNDERS

13

The Fakouri defendants argue that the following statement in Saunders's May 26, 2005, declaration is hearsay: "I have confirmed with MGE's dongle manufacturer SafeNet (previously Rainbow Technologies) that this is indeed how the dongle logic would interpret the improper month setting." (MGE Supp. App. at 916.) Although this is a close call, the Court concludes that the statement is not offered for the truth of the matter asserted and is, thus, not hearsay.

The Fakouri defendants' best-evidence objections to Saunders's statements about MGE's license agreements are not well founded because the license agreements Saunders refers to are, indeed, part of the summary-judgment record. *See* FED. R. EVID. 1002. These license-agreement statements are also clearly not hearsay. The Fakouri defendants also object to several of Saunders's statements in his declarations of March 31 and May 26 because they are outside his personal knowledge. However, the entirety of Saunders's declarations shows that these statements are well within his personal knowledge. The Fakouri defendants object to two exhibits to Saunders's May 25 declaration because they are unsigned. However, Saunders states that the documents are true and correct copies; thus, they are admissible. (MGE Supp. App. at 918-21.) The Fakouri defendants argue that Saunders is not qualified to testify as to MGE's market share for maintenance service contracts. This is a straightforward calculation that does not require an antitrust expert or an economist. The calculation is rationally based on his experience and knowledge gained as a result of his employment at MGE. Finally, the Fakouri defendants argue that Saunders's testimony regarding MGE's efforts to prevent copyright infringement is irrelevant. This evidence is at least relevant to MGE's assertions that it repeatedly attempted to protect its trade secrets and software, which is a key issue in this case.

E. DECLARATION OF ANNE M. WARD

Anne M. Ward is a former employee of MGE and Fakouri. She stated in her declaration that several Fakouri employees used MGE software in servicing MGE equipment and used MGE software to develop its FEE Tool. The Fakouri defendants object to the bulk of her declaration because it is not based on her personal knowledge and is, thus, rank speculation. The entirety of Ward's declaration shows that she has the requisite personal knowledge of these statements.

F. APRIL 20, 2005, DECLARATIONS OF WILLIS MARTI AND UDO POOCH

The Fakouri defendants object to Marti's and Pooch's declarations because they are conclusory and unsupported and because they are not qualified to opine about the FEE Tool. The entirety of the declarations show that the challenged statements are not conclusory and are based on detailed reports and supporting data. Further, as discussed above, Marti and Pooch are qualified to testify about the FEE Tool.

G. MAY 31, 2005, DECLARATION OF WILLIS MARTI

The Fakouri defendants assert that Marti's declaration contradicts Marti's earlier deposition testimony. After a review of the declaration and the deposition, the Court concludes that there is no contradiction that would prove fatal to the declaration's admissibility. The Fakouri defendants additionally argue that Marti has not produced the articles he references that allegedly support his methodology. Taken in context, Marti's reference to his published articles is merely one cog in the machinery that supports his methodology of computer-evidence collection; thus, sworn or certified copies of the articles are not required. *See* FED. R. CIV. P. 56(e); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996). Finally, the Fakouri defendants contend that much of Marti's declaration is conclusory. Once again, the entirety of the affidavit reveals that it is based on Marti's personal knowledge and is competent summary-judgment evidence.

15

## H. EXPERT REPORTS

The Fakouri defendants move to strike the expert report of Thomas John Wilkowske and the three expert reports of Dr. Laurance L. Prescott because they are merely signed letters and are not in affidavit form; thus, they are impermissible hearsay. These reports are attached to sworn declarations and are warranted to be true and correct. The reports are referred to in the declarations. (2 MGE Consol. App. at 5, 197.) Thus, copies of the reports are required to be attached. *See* FED. R. CIV. P. 56(e).

## I. POLICE REPORTS

MGE has offered as summary-judgment evidence four police reports that show MGE reported the theft of its equipment. The Fakouri defendants argue that these reports are irrelevant. However, they are particularly relevant in rebutting the Fakouri defendants' argument that MGE failed to protect its trade secret. They are admissible on summary judgment for that purpose.

## J. INTERNET ARTICLE

Finally, the Fakouri defendants attack the admissibility of an internet article that suggests the university attended by their expert, Wiechman, is nothing more than a "diploma mill." This article was offered to shore up MGE's argument that Marti's method of computer-information retrieval should withstand attack from Wiechman and in rebuttal to the Fakouri defendants' attacks on Marti's qualifications. Indeed, MGE admits that information available on the internet might be unreliable. The Court believes that because the reason for offering the article was tangential to MGE's case and because this type of impeachment evidence would probably be allowed on cross-examination, the article should not be stricken.

16

SIGNED March 14, 2006.

*[signature: Terry R. Means]*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

17